UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CERECEDES,<br><br>Plaintiff,<br><br>v.<br><br>HOUSTON CASUALTY COMPANY<br>and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 24-cv-06558-DMR<br><br>**ORDER DENYING DEFENDANT HOUSTON CASUALTY COMPANY'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiff Jason Cerecedes filed a Second Amended Complaint against Houston Casualty Company ("HCC" or "Defendant") and Does 1-100, asserting three claims: breach of contract; breach of the covenant of good faith and fair dealing; and declaratory relief for the appointment of *Cumis* counsel pursuant to California Civil Code § 2860. [Docket No. 11 (Second Amended Complaint, "SAC").] Plaintiff also seeks punitive damages. [*Id.*] Defendant now moves to dismiss the claim for declaratory relief as to *Cumis* counsel and the request for punitive damages. [Docket No. 13 (Motion to Dismiss, "MTD").] Plaintiff opposes the motion [Docket No. 14, "Opp'n"], and Defendant filed a reply [Docket No. 17, "Reply"]. The court held a hearing on January 23, 2025. [Docket No. 24.]

For the following reasons, Defendant's motion is denied.

## I.    BACKGROUND

### A.    Statement of Facts

Plaintiff makes the following allegations in the SAC, which the court takes as true for purposes of this motion.[1] Plaintiff is a licensed general contractor doing business as Astonishing

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

United States District Court
Northern District of California

1    Construction. [SAC ¶ 1.] He purchased commercial general liability insurance coverage and

2    commercial excess liability insurance coverage in 2018 from Defendant. [*Id.* ¶ 8.] Specifically,

3    Plaintiff purchased HCC Policy H18AC80828-00 (effective October 14, 2018, to October 14,

4    2019), which he renewed for October 14, 2019, to October 14, 2020 (Policy H19AC80828-01);

5    October 14, 2020, to October 14, 2021 (Policy H20AC80828-02); and October 14, 2021, to

6    October 14, 2022 (Policy H21AC80828-03) (collectively, the "Policy"). [*Id.*] Each iteration of

7    the Policy afforded coverage for bodily injury and property damage according to its Section I,

8    Coverage A. [*Id.* ¶ 9.]

9          Beginning in September 2019, Plaintiff commenced work on a construction renovation

10   project for Una Elias in Berkeley, California. [*Id.* ¶ 11.] In the lawsuit underlying this action,

11   Elias alleges that Plaintiff's work was negligent; that it allowed water intrusion into and around

12   Elias's residence; and that, during periods of rainfall after Plaintiff completed work on August 23,

13   2021, there was further damage to the exterior and interior of Elias's property. [*Id.* ¶ 13.] Prior to

14   filing the lawsuit, Elias and her counsel advised Plaintiff of the alleged property damage, and on

15   March 1, 2023, Plaintiff provided notice of Elias's claim to Defendant. [*Id.* ¶ 12.] On May 17,

16   2023, after conducting an investigation of the Elias property, Defendant declined coverage for two

17   reasons: (a) the damage "did not occur during the effective dates of the HCC policy periods," and

18   (b) the damage was only to work performed by Plaintiff and not to "other property," which is a

19   policy exclusion. [*Id.* ¶ 14.] The SAC alleges that these reasons were "factually incorrect" and

20   "would have been easily revealed had HCC conducted a reasonable investigation of the claim,

21   something it did not do." [*Id.*]

22         On May 24, 2023, Elias sued Plaintiff d/b/a Astonishing Construction in Alameda County

23   Superior Court, No. 23CV034217) (the "*Elias* Action"), for the property damage allegedly caused

24   by Plaintiff's construction renovation work. [*Id.* ¶¶ 12, 15.] The complaint in the *Elias* Action

25   specifically alleges that damage to her property occurred during rainfalls that took place after

26   Plaintiff completed construction, thus during at least two of Defendant's Policy periods, and also

27

28   ⸻⸻⸻⸻⸻⸻⸻⸻
     (per curiam) (citation omitted).

United States District Court
Northern District of California

alleges damages to her property that are not limited to Plaintiff's work. [*Id.* ¶ 15.] The SAC states that both allegations are in the *Elias* complaint and are contrary to Defendant's stated reasons for denying coverage on May 17, 2023. [*Id.*]

On August 25, 2023, Plaintiff's personal counsel responded to Defendant's decision to deny coverage. [*Id.* ¶ 15.] Counsel requested that Defendant acknowledge its duty to defend and indemnify Plaintiff and described how the specific facts alleged in the *Elias* Action contradicted HCC's prior assertions in denying coverage. [*Id.*] On September 1, 2023, Defendant again denied coverage for the same reasons set forth in its May 17, 2023 letter. [*Id.* ¶ 16.] At this point, Plaintiff requested the appointment of independent counsel under California Civil Code § 2860 (*Cumis* counsel), citing an "irreconcilable conflict" of interest between Plaintiff as insured and Defendant as insurer. [*Id.*] Plaintiff continued to follow up with Defendant "several more times via email correspondence" regarding the denial of coverage and "urged the HCC claims representative to promptly consult with coverage counsel as HCC's conduct and continued refusal to provide a defense and/or indemnity constituted clear bad faith." [*Id.* ¶ 17.]

By letter on October 5, 2023, Defendant acknowledged its duty to defend Plaintiff in the *Elias* Action and included a reservation of rights to limit its indemnification responsibility only as to the "Renovation/Handyman classification," for which coverage is afforded so long as certain policy exclusions do not apply. [*Id.* ¶¶ 17-18.][2] Defendant's reservation of rights letter both "admits that Elias asserts claims for covered damages" and maintains that certain of Elias's claims are subject to policy exclusions. [*Id.* ¶ 27.] In the same correspondence, Defendant informed Plaintiff that Defendant sought to retain insurance defense counsel, Thomas Fama, Esq., of the firm Wood Smith Henning & Berman ("Wood Smith") to represent Plaintiff. [*Id.* ¶ 19.]

The SAC alleges that due to Defendant's "prior conduct," Plaintiff's counsel requested a conflict check for Wood Smith as well as copies of all correspondence between the firm and Defendant or its representatives in order "to ensure that [Plaintiff]'s interests would be faithfully

---

[2] Neither the SAC nor any briefing on this motion identifies the specific Policy exclusions for the "Renovation/Handyman" classification and whether any such exclusions are implicated by the *Elias* Action.

protected[.]" [*Id.* ¶ 19.] Defendant did not respond, and on January 5, 2024, Plaintiff again requested the conflict check and correspondence between Defendant and Wood Smith. [*Id.* ¶ 20.] On January 8, 2024, Mr. Fama produced the results of the conflict check. [*Id.*] On January 16, 2024, more than "three months after [Plaintiff's] initial request," Defendant produced certain emails (some redacted) between Defendant and Mr. Fama, which the SAC alleges demonstrate that on the day Plaintiff initially requested the communications, Defendant directed Mr. Fama not to produce them to Plaintiff. [*Id.* ¶ 21.] The SAC alleges that this directive "revealed [Defendant's] efforts to hide information from its insured" and showed that Defendant was "placing its own interests over those of its insured." [*Id.*] The communications between Wood Smith and Defendant also allegedly indicate that Mr. Fama advised Defendant that he did not believe Plaintiff was entitled to the requested correspondence, which was improper legal advice "in direct conflict with Plaintiff's interests and request." [*Id.* ¶ 22.] Mr. Fama then provided the requested communications to Defendant's coverage counsel so that Defendant could "make the decisions as to what communications to release" and what information to redact, which Plaintiff alleges is a breach of duty to Plaintiff and demonstrates "collusion between Defendant and insurance defense counsel." [*Id.*]

The SAC alleges that these emails, once produced to Plaintiff's personal counsel, "laid bare" "Mr. Fama's conflict," prompting Defendant to appoint new insurance defense counsel. [*Id.* ¶ 23.] In February 2024, Defendant selected the law firm Skane Mills to defend Plaintiff in the *Elias* Action. [*Id.*] Following Plaintiff's review of a conflict check and production of correspondence between Defendant and Skane Mills, Plaintiff allowed this representation to proceed without prejudice to or waiver of his rights to independent counsel. [*Id.*] The SAC alleges that Defendant refuses to pay the majority of Plaintiff's attorneys' fees incurred from October 5, 2023 (the date of Mr. Fama's appointment) until the appointment of Skane Mills in February 2024, during which time Plaintiff incurred attorney's fees for representation by his personal counsel. [*Id.* ¶ 24.]

**B.    Procedural History**

On August 6, 2024, Plaintiff filed his complaint in the Superior Court of Contra Costa

1    County, No. C24-02071.  [Docket No. 1-1.]  Defendant removed the action on September 18,

2    2024.  [Docket No. 1.]  Plaintiff filed an amended complaint on October 4, 2024 [Docket No. 9],

3    followed by the SAC on October 23, 2024.  [Docket No. 11.][3]  Defendant now moves to dismiss

4    portions of the SAC.  [Docket No. 13.]

5    **II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS**

6            A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

7    sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51

8    F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim,

9    the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*,

10   551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there

11   is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v.*

12   *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*,

13   556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation

14   marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows

15   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16   *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

17   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

18   will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

19   **III.    DISCUSSION**

20         **A.    Defendant's Request to Consider the Policy Documents**

21           Defendant attaches to its motion and asks the court to consider "documents referred to and

22   upon which the complaint is premised"—here, its Policy for each of the effective time periods

23   October 14, 2018 to October 14, 2019 [Docket No. 13-1, "Exhibit A"]; October 14, 2019 to

24   October 14, 2020 [Docket No. 13-2, "Exhibit B"]); October 14, 2020 to October 14, 2021

25   [Docket No. 13-3, "Exhibit C"]); and October 14, 2021 to October 14, 2022 [Docket No. 13-4,

26   "Exhibit D"].  [MTD at 13 (citing *In re Pacific Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d

27

28   [3] The SAC removed Plaintiff's request for treble damages as well as a claim for Unfair Business
     Practices.

United States District Court
Northern District of California

1160, 1164 (N.D. Cal. 2001); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on*

*other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002));

*accord United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011)).]

The incorporation by reference doctrine permits district courts to consider materials

outside a complaint by treating "certain documents as though they are part of the complaint itself."

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  This is to prevent

"plaintiffs from selecting only portions of documents that support their claims, while omitting

portions of those very documents that weaken—or doom—their claims."  *Id.*  Incorporation by

reference is appropriate "if the plaintiff refers extensively to the document or the document forms

the basis of the plaintiff's claim."  *Id.* at 1002 (quotation omitted); *see also Knievel v. ESPN*, 393

F.3d 1068, 1076 (9th Cir. 2005) (the doctrine applies in "situations in which the plaintiff's claim

depends on the contents of a document, the defendant attaches the document to its motion to

dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff

does not explicitly allege the contents of that document in the complaint").  If a document "merely

creates a defense to the well-pled allegations in the complaint, then that document did not

necessarily form the basis of the complaint."  *Khoja*, 899 F.3d at 999.

The SAC incorporates by reference the Policy documents submitted by Defendant.

Plaintiff does not object to their incorporation, nor does he dispute their authenticity.  However,

Defendant does not reference any of the Policy language in its briefing, which suggests the Policy

documents are of no particular relevance to Defendant's arguments.

**B.      Appointment of *Cumis* Counsel**

Defendant argues that Plaintiff has not and cannot plead any facts to support a claim for

declaratory relief regarding the appointment of *Cumis* counsel.  [MTD at 13-17.]  Under California

law, where a conflict of interest exists between insurer and insured, "the insured has a right to

retain independent counsel to be paid for by the insurer, commonly referred to as '*Cumis*

counsel.'"  *Cont'l Cas. Co. v. Enodis Corp.*, 417 F. App'x 668, 671 (9th Cir. 2011) (citing *San*

*Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358 (1984); *Bogard v.*

*Emps. Cas. Co.*, 164 Cal. App. 3d 602 (1985)).  In 1987, the State Legislature codified an insurer's

duty to provide independent counsel in California Civil Code § 2860, which provides that, "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured" unless the insured waives the right to independent counsel in writing.  Cal. Civ. Code § 2860(a). "The potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007-08 (1998).

In *Cumis*, the underlying lawsuit against the insured alleged in part that the insured's conduct was intentional, which conduct would not have been covered under the insurer's policy. *See* 162 Cal. App. 3d at 361-62.  The appellate court concluded that the interests of insurer and insured were in conflict where coverage turned on whether the insured's conduct was intentional. "Although issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status. . . . Each time [a decision] must be made, the lawyer is placed in the dilemma of helping one of his clients concerning insurance coverage and harming the other." *Id.* at 364-65.  In such circumstances, the *Cumis* court concluded, "the insurer must pay the reasonable cost for hiring independent counsel by the insured." *Id.* at 375.  However, "[i]f the issue on which coverage turns is independent of the issues in the underlying case, *Cumis* counsel is not required." *Blanchard v. State Farm Fire & Cas. Co.*, 2 Cal. App. 4th 345, 350 (1991) (collecting cases).

California courts have recognized that "a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights.  There must also be evidence that the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim." *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1421 (2002) (quotation marks and citations omitted, alterations in original); *see also* Cal. Civ. Code § 2860(b).  "It is only when the basis for the reservation of rights is such as to cause

1   assertion of factual or legal theories which undermine or are contrary to the positions to be

2   asserted in the liability case that a conflict of interest sufficient to require independent counsel, to

3   be chosen by the insured, will arise." *Gafcon*, 98 Cal. App. 4th at 1421-22.  Moreover, "[w]here

4   the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its

5   policy, there can be no actual conflict based on the application of that exclusion during the

6   pendency of the action. . . . A general reservation of rights does not give rise to a conflict of

7   interest or create a duty to provide independent counsel." *Fed. Ins. Co. v. MBL, Inc.*, 219 Cal.

8   App. 4th 29, 44 (2013) (citing *Dynamic Concepts*, 61 Cal. App. 4th at 1010 n.10).

9        The SAC alleges that Defendant's October 5, 2023 reservation of rights letter created an

10   "irreconcilable conflict" of interest that warrants the appointment of *Cumis* counsel because

11   "appointed insurance defense counsel is in a position, through litigation tactics, including

12   discovery, expert evaluations, and inspections, to control the outcome of the coverage issues" that

13   will be contrary to Plaintiff's interest in the liability case.  [SAC ¶ 27.]  The SAC further alleges

14   that Defendant could "avoid[] the expense of expert investigation and destructive testing that can

15   otherwise reveal damage to the Elias property other than [Plaintiff's] own work, which

16   [Defendant] claims would be excluded damages under the policy."  [*Id.* ¶ 18.]  The SAC bolsters

17   these allegations related to the conflict of interest with various other allegations describing

18   Defendant's bad faith conduct—namely, Defendant's two denials of coverage on May 17, 2023,

19   and September 1, 2023, and Defendant's October 5, 2023 retention of and subsequent

20   correspondence with Mr. Fama about Plaintiff's conflict check request, as illustrated by the

21   correspondence produced to Plaintiff.  [*Id.* ¶¶ 12-23.]  The SAC moreover specifically alleges that

22   Defendant's repeated denials, and eventual acceptance, of coverage were "based on the very same

23   information upon which [Defendant] had denied coverage for multiple months[.]"  [*Id.* ¶ 18.]

24        Taken together as true, these allegations plausibly state a claim for the appointment of

25   *Cumis* counsel due to Plaintiff's and Defendant's "competing interests [that] create an ethical

26   conflict for counsel." *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789,

27   797 (2018) ("*Centex II*") (quoting *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal.

28   App. 4th 23, 30 (2015) ("*Centex I*")).  The SAC alleges that Defendant's October 5, 2023

United States District Court
Northern District of California

1   reservation of rights letter "admits that Elias asserts claims for covered damages—which Elias

2   claimed all along—as well as for claims subject to policy exclusions."  [SAC ¶ 27.]  The SAC

3   alleges that the underlying *Elias* Action will thus involve factual determinations that counsel can

4   use to determine the coverage afforded to Plaintiff.  According to the SAC, Defendant-appointed

5   counsel has the incentive to litigate the *Elias* Action in a manner that favors the application of

6   policy exclusions to minimize coverage—for example, through factual development or (non-

7   development) showing that any property damage was only to work performed by Plaintiff and/or

8   fell outside of the Policy period.  While the factfinders in the *Elias* Action may not necessarily

9   make determinations on these issues, whichever counsel represents Plaintiff in the *Elias* Action

10  will nevertheless control the "discovery, expert evaluations, and inspections" that can determine

11  the outcome of Defendant's coverage.  [*Id.*]  Plaintiff's allegations thus create more than the "mere

12  possibility of an unspecified conflict [that] does not require independent counsel."  *Dynamic*

13  *Concepts*, 61 Cal. App. 4th at 1007.

14      Defendant argues that no such conflict exists because Plaintiff and Defendant have a

15  common interest to minimize Plaintiff's liability in the *Elias* Action, and coverage is not itself at

16  issue there.  [MTD at 13-17, Reply at 4-5.]  Defendant points to *Centex I*, where the court on

17  appeal from a demurrer "[did] not perceive the interests of [insured] and [insurer] to be adverse"

18  where "[insured]'s liability is derivative and [insurer] has the same interest in defending the

19  underlying claim."  *Centex I*, 237 Cal. App. 4th at 31-32.  The *Centex I* court did not credit the

20  insured's allegations that the insurer could control the underlying action and dismissed its

21  allegations as "conclusions without substance, not facts."  *Id.* at 32.  By contrast, here the SAC's

22  allegations that the outcome of coverage issues is "controlled" by counsel, *Gafcon*, 98 Cal. App. at

23  1421, are further supported by allegations that Defendant has already twice incorrectly disclaimed

24  coverage entirely, including following an investigation.  *Cf. Blanchard*, 2 Cal. App. 4th at 350

25  ("Appellant produced no evidence to show in what specific way the defense attorney could have

26  controlled the outcome of the damage issue to appellant's detriment, or had incentive to do so.

27  Appellant merely urged that there was an unspecified *possibility* of a conflict." (emphasis in

28  original)); *Colony Ins. Co. v. Glenn E. Newcomer Constr.*, No. 20-cv-00480-DMR, 2021 WL

United States District Court
Northern District of California

9

3427012, at *4 (N.D. Cal. Aug. 5, 2021) (finding "entirely conclusory" insured's counterclaim that did "not allege that [insurer]'s counsel could control the characterization of the injury in the underlying action in a way that impacts the coverage question in this case" (internal quotation marks and citation omitted)).  And the SAC alleges multiple instances in which Defendant's allegedly bad faith conduct underscores Defendant's incentive in litigating the *Elias* Action to minimize coverage at Plaintiff's expense.  [SAC ¶¶ 17-18, 27, 29.]

Defendant's other cited cases do not persuade otherwise.  As Plaintiff's briefing notes [Opp'n at 13], Defendant relies largely on cases decided well after the motion to dismiss stage where the courts' rulings were grounded in evidence produced in discovery.  *See Centex II*, 19 Cal. App. 5th at 789 (appeal from summary judgment); *Swanson v. State Farm Gen. Ins. Co.*, 219 Cal. App. 4th 1153 (2013) (appeal from summary judgment); *Gafcon*, 98 Cal. App. 4th at 1423 (appeal from summary judgment); *Dynamic Concepts*, 61 Cal. App. 4th at 1004 (appeal and cross-appeal from judgment); *Blanchard*, 2 Cal. App. 4th at 345 (appeal from judgment).  Prevailing authority makes clear that the *Cumis* counsel inquiry is fact-specific, and the SAC's allegations concern largely "factual issues that are best resolved in a motion for summary judgment." *Admiral Ins. Co. v. Rodriguez*, No. 11-cv-01565-AG-MLGx, 2012 WL 13020022, at *4 (C.D. Cal. June 14, 2012) (denying motion to dismiss claims for breach of contract and breach of the implied covenant of good faith and fair dealing that were "predicated on the insurance provider's failure to provide independent counsel").  Defendant's arguments are more appropriate at the merits stage and not on a Rule 12 motion.

Defendant further argues that any conflict of interest that may have existed with Plaintiff "ceased to exist when [Defendant] appointed" Skane Mills to represent Plaintiff.  [MTD at 16-17.] However, Plaintiff alleges a conflict between his and Defendant's interests, not those of Mr. Fama. The SAC alleges that any Defendant-appointed counsel would be incentivized to litigate the *Elias* Action in order to minimize coverage.  [SAC ¶ 18; *see also id.* ¶ 27 (alleging an "irreconcilable conflict between the interests of HCC and Cercedes in the defense of the Elias action").]  The SAC further alleges that, even after the appointment of Skane Mills and further due diligence, "including review of a conflict check and prompt production of communications between HCC

United States District Court
Northern District of California

and the Skane Mills firm," Plaintiff did not "waive[] [] his rights to independent counsel, because it was apparent at this point that HCC was placing its interests above those of Cerecedes in an effort to wrongly disclaim coverage wherever and whenever possible." [*Id.* ¶ 23.] Because the alleged conflict of interest between Plaintiff and Defendant is not specific to Mr. Fama, the SAC sufficiently pleads that the appointment of Skane Mills did not remove the conflict of interest between the insurer and the insured.

### C.    Punitive Damages

Defendant argues that Plaintiff has failed to plead sufficient facts to support a request for punitive damages. [MTD at 17-20.] California Civil Code § 3294 authorizes an award of exemplary damages against a tortfeasor where there is "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ." Cal. Civ. Code § 3294(a). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). Generally, mere or even gross negligence will not support an award of punitive damages. *See Simmons v. Southern Pac. Transp. Co.*, 62 Cal. App. 3d 341, 368 (1972); *see also Taylor v. Superior Court*, 24 Cal. 3d 890, 899-900 (1979) ("[O]rdinarily, routine negligent or even reckless disobedience of traffic laws would not justify an award of punitive damages.").

To make a colorable claim for punitive damages at the motion to dismiss stage, Plaintiff must allege sufficient facts to constitute oppression, fraud, or malice. Defendant argues that the SAC contains "merely generalized, boilerplate allegations, with no facts that HCC acted with malicious, oppressive, or fraudulent intent whatsoever[.]" [MTD at 18.] The court disagrees. The SAC alleges that Defendant engaged in "bad faith conduct with a willful and conscious disregard of Cerecedes's rights." [SAC ¶ 41.] It alleges in the alternative that Defendant's conduct "constituted an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention of depriving Cerecedes of property of legal rights," and that the

conduct "was malicious, oppressive and/or fraudulent under California Civil Code section 3294." [*Id.*] These allegations, together with other specific allegations in the SAC describing Defendant's conduct—from its two allegedly incorrect declinations of coverage, its subsequent about-face on these declinations, its appointment of Mr. Fama but subsequent reluctance and redaction of correspondence with Mr. Fama, and replacement of Mr. Fama with new insurance defense counsel—are more than "merely generalized, boilerplate allegations" [MTD at 18] and are sufficient to support a claim that Defendant acted with "such a conscious and deliberate disregard of the interests of others that [Defendant's] conduct may be called willful or wanton." *Zheng v. Maroun*, No. 21-cv-07925-SK, 2022 WL 14813840, at *3 (N.D. Cal. Oct. 25, 2022) (quoting *Taylor*, 24 Cal. 3d at 894-95).

**IV.    CONCLUSION**

     For the foregoing reasons, Defendant's motion to dismiss is denied.

Dated: January 30, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California